SEC-SterneAgee-E-0000091

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"). THESE SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A) TO THE COMPANY, (B) OUTSIDE THE UNITED STATES IN COMPLIANCE WITH RULE 904 OF REGULATION S UNDER THE SECURITIES ACT, (C) IN COMPLIANCE WITH RULE 144 OR 144A THEREUNDER, IF AVAILABLE, AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS, (D) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT, OR (E) IN A TRANSACTION THAT DOES NOT REQUIRE REGISTRATION UNDER THE SECURITIES ACT OR ANY APPLICABLE STATE SECURITIES LAWS, AND THE HOLDER HAS, PRIOR TO SUCH SALE, FURNISHED TO THE COMPANY AN OPINION OF COUNSEL OR OTHER EVIDENCE OF EXEMPTION, IN EITHER CASE REASONABLY SATISFACTORY TO THE COMPANY. HEDGING TRANSACTIONS INVOLVING THESE SECURITIES MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE U.S. SECURITIES ACT.

## 10% PROMISSORY NOTE

# AMERICA WEST RESOURCES, INC

### DUE November 9, 2011

Original Issue Date: November 10, 2010                    US $500,000.00

This Promissory Note of America West Resources, Inc, a Nevada corporation (the "Company"), designated its Promissory Note due November 9, 2011 (this "Note"), is issued to John Jack Babikian (together with its permitted successors and assigns, the "Holder") in accordance with exemptions from registration under the Securities Act of 1933, as amended (the "Securities Act").

### Article I.

Section 1.01  Principal and Interest. For value received, the Company hereby promises to pay to the order of the Holder, in lawful money of the United States of America and in immediately available funds the principal sum of up to Five Hundred Thousand Dollars ($500,000.00), such amount having been advanced by Holder as requested by the Company on November 10, 2010, together with accrued but unpaid interest on such advances from the date of each advance, upon the earliest (the "Maturity Date") of (A) November 9, 2011, or (B) the Company's successful closing of an equity financing of $10 million or more; or (C) the acceleration of this Note upon the occurrence of an Event of Default, as defined in Section 3.01.

(a)  Prior to the occurrence of an Event of Default, the unpaid principal balance of this Note shall accrue interest at the rate of 10% per annum, accruing as of the date of the advances made by Holder and referenced above. After the occurrence of an Event of Default, all outstanding principal and accrued unpaid interest (together with any other amounts due to Holder under this Note) shall bear interest as provided in Section 3.02 below.

SEC-StemeAgee-E-0000092

(b) On the Maturity Date, the entire unpaid principal and accrued interest shall be paid to the Holder.

(c) The Company may prepay any portion of the principal and interest on this Note without the prior written consent of the Holder. All partial prepayments shall be applied first to accrued unpaid interest and then to principal.

Section 1.02  Issuance of Shares. As additional consideration for the loans evidenced by this Note, the Company shall issue to Holder on or before November 18, 2010, 416,667 shares of the Company's unregistered common stock (the "Shares").

Section 1.03  Investment Representations. Holder hereby makes the following representations and warranties:

(a) Investment Purpose. Holder is acquiring the Note for its own account for investment only and not with a view towards, or for resale in connection with, the public sale or distribution thereof, except pursuant to sales registered or exempted under the Securities Act. The Holder agrees not to sell, hypothecate or otherwise transfer the Holder's securities unless such securities are registered under the federal and applicable state securities laws, or unless, in the opinion of counsel satisfactory to the Company, an exemption from such law is available.

(b) Accredited Investor Qualifications. The Holder (i) if a natural person, represents that the Holder has reached the age of 21 and has full power and authority to execute and deliver this Agreement and all other related agreements or certificates and to carry out the provisions hereof and thereof; (ii) if a corporation, partnership, or limited liability company or partnership, or association, joint stock company, trust, unincorporated organization or other entity, represents that such entity was not formed for the specific purpose of acquiring the Note, such entity is duly organized, validly existing and in good standing under the laws of the state of its organization, the consummation of the transactions contemplated hereby is authorized by, and will not result in a violation of state law or its charter or other organizational documents, such entity has full power and authority to execute and deliver this Agreement and all other related agreements or certificates and to carry out the provisions hereof and thereof and to purchase and hold the Note, the execution and delivery of this Agreement has been duly authorized by all necessary action, this Agreement has been duly executed and delivered on behalf of such entity and is a legal, valid and binding obligation of such entity; or (iii) if executing this Agreement in a representative or fiduciary capacity, represents that it has full power and authority to execute and deliver this Agreement in such capacity and on behalf of the subscribing individual, ward, partnership, trust, estate, corporation, or limited liability company or partnership, or other entity for whom the Holder is executing this Agreement, and such individual, partnership, ward, trust, estate, corporation, or limited liability company or partnership, or other entity has full right and power to perform pursuant to this Agreement and make an investment in the Company, and represents that this Agreement constitutes a legal, valid and binding obligation of such entity. The execution and delivery of this Agreement will not violate or be in conflict with any order, judgment, injunction, agreement or controlling document to which the Holder is a party or by which it is bound;

SEC-StemeAgee-E-0000093

(c) <u>Solicitation</u>. The Holder is unaware of, is in no way relying on, and did not become aware of the offering of the Note through or as a result of, any form of general solicitation or general advertising including, without limitation, any article, notice, advertisement or other communication published in any newspaper, magazine or similar media or broadcast over television or radio, in connection with the offering and sale of the Note and is not subscribing for the Note and did not become aware of the offering of the Note through or as a result of any seminar or meeting to which the Holder was invited by, or any solicitation of a subscription by, a person not previously known to the Holder in connection with investments in securities generally;

(d) <u>Holder Liquidity</u>. Holder has adequate means of providing for Holder's current financial needs and foreseeable contingencies and has no need for liquidity of its investment in the Note for an indefinite period of time and is aware that an investment in the Note involves a number of significant risks.

(e) <u>Reliance on Exemptions</u>. Holder understands that the Note is being offered and sold to it in reliance on specific exemptions from the registration requirements of United States federal and state securities laws and that the Company is relying, in part upon the truth and accuracy of, and such Holder's compliance with, the representations, warranties, agreements, acknowledgments and understandings of such Holder set forth herein in order to determine the availability of such exemptions and the eligibility of such Holder to acquire such securities.

(f) <u>Information</u>. Holder and its advisors, if applicable, have been furnished with all materials relating to the business, finances and operations of the Company and information it deemed material to making an informed investment decision regarding its purchase of the Note. Holder and its advisors, if applicable, have been afforded the opportunity to review the reports, schedules, forms, statements and other documents required to be filed by it with the SEC pursuant to the reporting requirements of the Securities and Exchange Act of 1934. Holder and its advisors, if applicable, have been afforded the opportunity to ask questions of the Company and its management. Holder has sought such accounting, legal and tax advice as it has considered necessary to make an informed investment decision with respect to its acquisition of the Note.

(g) <u>No Other Representations or Information</u>. In evaluating the suitability of an investment in the Note, the Holder has not relied upon any representation or information (oral or written) other than as stated in this. No oral or written representations have been made, or oral or written information furnished, to the Holder or its advisors, if any, in connection with the offering of the Notes which are in any way inconsistent with the information contained in this Agreement.

(h) <u>Transfer or Resale</u>. Holder understands that the Note has not been and is not being registered under the Securities Act or any state securities laws, and may not be offered for sale, sold, assigned or transferred except in compliance with applicable securities laws.

<u>Section 1.04</u>  <u>Reliance on Note Register</u>. Prior to due presentment to the Company for transfer or conversion of this Note, the Company and any agent of the Company may treat the person in whose name this Note is duly registered on the Note Register as the owner hereof for the purpose

3

SEC-SterneAgee-E-0000094

of receiving payment as herein provided and for all other purposes, whether or not this Note is overdue, and neither the Company nor any such agent shall be affected by notice to the contrary.

Section 1.05   Holder's Rights.  In addition to the rights and remedies given it by this Note, the Holder shall have all those rights and remedies allowed by applicable laws.  The rights and remedies of the Holder are cumulative and recourse to one or more right or remedy shall not constitute a waiver of the others.

### Article II.

Section 2.01   Amendments and Waiver of Default.  The Note may not be amended or waived without the consent of the Holder.

### Article III.

Section 3.01   "Event of Default", wherever used herein, means any one of the following events (whatever the reason and whether it shall be voluntary or involuntary or effected by operation of law or pursuant to any judgment, decree or order of any court, or any order, rule or regulation of any administrative or governmental body):

(a)   any default in the payment of the unpaid principal and accrued interest as provided in this Note;

(b)   the Company shall fail to observe or perform any other covenant or agreement contained in this Note which failure is not cured, if possible to cure, within 10 days after notice of such default is sent by the Holder or by any other holder to the Company;

(c)   the Company shall commence, or there shall be commenced against the Company a case under any applicable bankruptcy or insolvency laws as now or hereafter in effect or any successor thereto, or the Company commences any other proceeding under any reorganization, arrangement, adjustment of debt, relief of debtors, dissolution, insolvency or liquidation or similar law of any jurisdiction whether now or hereafter in effect relating to the Company or there is commenced against the Company any such bankruptcy, insolvency or other proceeding which remains undismissed for a period of 60 days; or the Company is adjudicated insolvent or bankrupt; or any order of relief or other order approving any such case or proceeding is entered; or the Company suffers any appointment of any custodian or the like for it or any substantial part of its property which continues undischarged or unstayed for a period of 60 days; or the Company makes a general assignment for the benefit of creditors; or the Company shall fail to pay, or shall state that it is unable to pay, or shall be unable to pay, its debts generally as they become due; or the Company; or any corporate or other action is taken by the Company or any subsidiary thereof for the purpose of effecting any of the foregoing;

Section 3.02   If any Event of Default occurs, the full principal amount of this Note, together with interest and all other amounts owing to Holder under this Note, to the date of acceleration, shall become immediately due and payable in cash and shall bear interest at the rate of 18% per

SEC-StemeAgee-E-0000095

annum, or such lower maximum amount of interest permitted to be charged under applicable law. The Holder need not provide and the Company hereby waives any presentment, demand, protest or other notice of any kind, and the Holder may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law. Such declaration may be rescinded and annulled by Holder at any time prior to payment hereunder and the Holder shall have all rights as a Note holder until such time, if any, as the full payment under this Section shall have been received by it. No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon.

## Article IV.

Section 4.01   General Waivers.   The Company waives presentment for payment, demand, notice of intent to accelerate, notice of acceleration, protest and notice of protest, and of dishonor and diligence in collecting and the bringing of suit against any other party, and agrees to all renewals, extensions, partial payments, releases, subordinations and substitutions of security, in whole or in part, with or without notice, before or after maturity. The failure by the Holder to exercise any of its rights, remedies, recourses, or powers upon the occurrence of one or more Events of Default shall not constitute a waiver of the right to exercise the same or any other right, remedy, recourse, or power at any subsequent time in respect to the same or any other Event of Default. The acceptance by the Holder of any payment hereunder which is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the right to exercise any of the Holder's rights, remedies, recourses, or powers at that time, or any subsequent time, or nullify any prior exercise of any such right, remedy, recourse or power without the written consent of the Holder, except as and to the extent otherwise required by applicable law.

## Article V.

Section 5.01   Notice.   Notices regarding this Note shall be sent to the parties at the following addresses, unless a party notifies the other parties, in writing, of a change of address:

| | |
|---|---|
| If to the Company, to: | America West Resources, Inc.<br>57 West 200 South, Suite 400<br>Salt Lake City, Utah 84101<br>Attn: Brian E. Rodriguez, CFO |
| With a copy to: | Thomas C. Pritchard<br>Brewer & Pritchard, P.C.<br>3 Riverway, Suite 1800<br>Houston, Texas 77056 |
| If to the Holder: | At the address set forth on the signature page. |

Section 5.02   Governing Law.   All questions concerning the construction, validity, enforcement and interpretation of this Note shall be governed by and construed and enforced in accordance with the internal laws of the State of Utah, without regard to the principles of conflicts of law

5

SEC-SterneAgee-E-0000096

thereof. Each party agrees that all legal proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by this Note (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, employees or agents) shall be commenced in the state and federal courts sitting in the City of Salt Lake, Salt Lake County, Utah (the "Utah Courts"). Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the Utah Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, or such Utah Courts are improper or inconvenient venue for such proceeding; provided, however, that any suit to foreclose any lien which secures the payment hereof may be brought by the Holder in the jurisdiction where the property subject to such lien is located. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the address in effect for notices to it under this Note and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. If either party shall commence an action or proceeding to enforce any provisions of this Note, then the prevailing party in such action or proceeding shall be reimbursed by the other party for its attorney's fees and other costs and expenses incurred with the investigation, preparation and prosecution of such action or proceeding.

Section 5.03   Reduction in Interest. It is the intention of the Company and the Holder to conform strictly to the applicable laws of usury. All agreements and transactions between the Holder and the Company, whether now existing or hereafter arising, whether contained herein or in any other instrument, and whether written or oral, are hereby expressly limited so that in no contingency or event whatsoever, whether by reason of acceleration of the maturity hereof, late payment, prepayment, demand for prepayment or otherwise, shall the amount contracted for, charged or received by the Holder from the Company for the use, forbearance, or detention of the principal indebtedness or interest hereof, which remains unpaid from time to time, exceed the Maximum Lawful Amount. Any interest payable hereunder or under any other instrument relating to the loan evidenced hereby that is in excess of the Maximum Lawful Amount, shall, in the event of acceleration of maturity, late payment, prepayment, demand or otherwise, be applied to a reduction of the principal indebtedness hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of such principal, such excess shall be refunded to the Company. To the extent not prohibited by law, determination of the Maximum Lawful Amount of interest shall at all times be made by amortizing, prorating, allocating and spreading all interest at any time contracted for, charged or received from the Company in connection with the loan in equal parts during the period of the full term of the loan evidenced hereby until repayment in full of the principal (including the period of any renewal or extension hereof), so that the actual rate of interest on account of such indebtedness does not exceed the Maximum Lawful Amount. As used herein, the term "Maximum Lawful Amount" means the maximum amount of non-usurious interest, permitted with respect to the indebtedness evidenced by this Note from time to time by applicable law after taking into account any and all fees, payments, and other charges that constitute interest under applicable law. Use of the term Maximum Lawful Amount shall not be deemed to imply or affirm that there is any Maximum Lawful Amount applicable to this Note.

SEC-SterneAgee-E-0000097

Section 5.04  WAIVER OF JURY TRIAL.  THE COMPANY AND THE HOLDER HEREBY KNOWINGLY, VOLUNTARILY, IRREVOCABLY AND INTENTIONALLY WAIVE, TO THE MAXIMUM EXTENT PERMITTED BY LAW, ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM ARISING OUT OF OR RELATED TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED BY THE TERMS OF THE LOAN AGREEMENT OR THE ACTIONS OF THE HOLDER IN THE ENFORCEMENT HEREOF OR THEREOF.

Section 5.05  Severability.  The invalidity of any of the provisions of this Note shall not invalidate or otherwise affect any of the other provisions of this Note, which shall remain in full force and effect.

Section 5.06  Entire Agreement and Amendments.  This Note reflect the entire understandings and agreements of the Company and the Holder with respect to the subject matter hereof. Any and all prior understandings and agreements and any and all contemporaneous understandings and agreements are incorporated in this Note. Except as specifically set forth herein, there are no understandings or agreements, express or implied, with respect to the subject matter of the Note. This Note may be amended only by an instrument in writing executed by the parties hereto.

IN WITNESS WHEREOF, with the intent to be legally bound hereby, the parties hereto executed this Note as of the date first written above.

America West Resources, Inc.

By:_____
   Brian E. Rodriguez, CFO

{HOLDER SIGNATURE PAGE FOLLOWS}

SEC-SterneAgee-E-0000098

**Holder**

**John Jack Babikian**

By: _____
    John Jack Babikian

Address for Notice: