**NETJETS**
System                                                                                                              04/10

## GULFSTREAM IV-SP
## FRACTIONAL OWNERSHIP PROGRAM MANAGEMENT SERVICES AGREEMENT

**THIS FRACTIONAL OWNERSHIP PROGRAM MANAGEMENT SERVICES AGREEMENT** (this "Agreement") is made and entered into between NetJets International, Inc. ("NJI"), a Delaware corporation having its principal office and place of business at 4111 Bridgeway Avenue, Columbus, Ohio 43219, and the individual or entity whose signature and address appears below ("Owner").

**WITNESSETH:**

**WHEREAS**, Owner pursuant to a Fractional Interest Lease Agreement ("Lease") dated of even date hereof, leases the percentage interest set forth on the Schedule hereto (the "Interest") in that certain Gulfstream IV-SP aircraft ("GIV-SP Aircraft") bearing the manufacturer's Serial Number and Federal Aviation Administration Registration Number set forth on the Schedule hereto, equipped with two (2) Rolls Royce Tay MK611-8 engines as more particularly described in the applicable Fractional Interest Lease Agreement (hereinafter called the "Aircraft"); and

**WHEREAS,** Owner together with such other parties which own or lease the remaining undivided interests in the Aircraft (the "Additional Interest Owners") have agreed to participate in the NetJets Fractional Ownership Program (the "NetJets Program"); and

**WHEREAS,** Owner together with the Additional Interest Owners have agreed to engage NJI to provide fractional ownership program management services and to act as the program manager for the NetJets Program to ensure the operation and maintenance of the Aircraft, to act as the program manager for the NetJets Program and to utilize the Aircraft for the benefit, and under the direction, of Owner and the Additional Interest Owners; and

**WHEREAS,** Owner together with the Additional Interest Owners have agreed to enter a Master Dry-Lease Aircraft Exchange Agreement with owners and lessees of other aircraft as part of the NetJets Program (the "Exchange Agreement"); and

**WHEREAS**, NJI is desirous of managing the use, maintenance and all other matters pertaining to the Aircraft delivered by Owner and the Additional Interest Owners to NJI pursuant hereto, and acting as the fractional ownership program manager for the NetJets Program on the terms and conditions set forth herein.

**NOW, THEREFORE,** in consideration of the mutual covenants herein contained and other good and valuable consideration, the parties hereto hereby agree as follows:

1.   Owner hereby engages NJI, and NJI hereby agrees, to manage for the benefit of the Owner the Interest in the Aircraft and to provide fractional ownership program management services on Owner's behalf in connection with Owner's participation in the NetJets Program and NJI hereby accepts possession of the Aircraft in good working order and condition from Owner and from the Additional Interest Owners for the purposes set forth herein.

2.   NJI hereby agrees for the benefit and at the direction of Owner that it shall use, manage and maintain the Aircraft with all due reasonable care and in accordance with applicable insurance coverage and within the standards and guidelines established by the Federal Aviation Administration (the "FAA") and shall comply with all laws, ordinances or regulations relating to the use, operation and maintenance of the Aircraft. NJI shall permit the Aircraft to be used only as contemplated by the manufacturer thereof as specified in the owners manual and other technical materials regarding the Aircraft provided by the manufacturer to Owner.

3.   (a) Throughout the term of this Agreement NJI shall, at its own cost and expense, (1) have the Aircraft inspected, maintained, serviced, repaired, overhauled and tested by duly competent personnel, in accordance with both the Aircraft manufacturer's and the FAA's approved maintenance and preventive repair programs therefor, so as to keep the Aircraft in good operating condition, ordinary wear and tear excepted, and in such condition as may be necessary to enable the airworthiness certification of the Aircraft to be maintained in good standing at all times under 49 U.S.C. §40101, et seq., as in effect from time to time; (2) as often as necessary in the reasonable discretion of NJI to the extent required to keep the Aircraft in good cosmetic appearance, repaint the exterior and refurbish the interior of the Aircraft; (3) maintain all records, logs and other materials required by the FAA to be maintained in respect of the Aircraft and make

**IN WITNESS WHEREOF,** the parties hereto have caused these presents to be executed the day and year set forth next to their respective signatures. The persons signing below warrant their authority to sign.

Owner:   MIDDLE BAY TRADE, LTD, a  Seychelles   corporation

Signature: _____  6/15/12
(date)

Name:    John Babikian

Title:    President

Address:   12914 The Reef, Atlantis Paradise Island, Nassau, Bahamas

NETJETS INTERNATIONAL, INC.

Signature: _____  6/15/12
(date)

Name:    Christopher Belcher

Title:    Assistant Secretary

13

ACKNOWLEDGEMENT OF FRACTIONAL OWNER'S
OPERATIONAL CONTROL RESPONSIBILITIES

Middle Bay Trade, Ltd (Owner) certifies that NetJets International, Inc. ("Program Manager"), which is the fractional ownership program manager for the NetJets fractional ownership program ("the Program"), has briefed Owner on Owner's operational control responsibilities. The term "Owner" includes persons who own an interest or hold a multi-year leasehold interest in an aircraft in the Program ("Program Aircraft").

Owner certifies that Owner has read this Acknowledgement of Fractional Owner's Operational Control Responsibilities ("Acknowledgement") and that this Acknowledgement is part of the program management services contract between Owner and Program Manager.

Owner understands that Owner is in operational control of a Program Aircraft and Owner may operate that Program Aircraft in accordance with Federal Aviation Regulations ("FAR") Part 91, Subpart K when: (i) Owner has the rights and is subject to the limitations set forth in sections 91.1003 through 91.1013 of Subpart K, (ii) Owner has directed that a Program Aircraft carry passengers or property designated by Owner, and (iii) the Program Aircraft is carrying those passengers or property. Owner understands that Owner is in operational control of a Program Aircraft even where the Owner leases the Program Aircraft from another owner through the Master Dry-Lease Aircraft Exchange Agreement.

The FAR require that Owner acknowledge the responsibilities and potential liabilities described below.

When Owner is in operational control, the following apply:

    A. Owner is responsible for safe operations and for complying with all applicable laws and regulations and the management specifications issued to Program Manager.

    B. Even though Owner may delegate to the Program Manager performance of some or all of the tasks associated with carrying out Owner's responsibilities, Owner continues to be jointly and individually responsible, along with the Program Manager, for performance of these tasks and for compliance with applicable requirements.

    C. Owner may have liability risk in connection with the operation of the Program Aircraft, including possible liability risk for at least the following:

        1. Enforcement actions for any noncompliance.

        2. Liability if a flight-related occurrence causes personal injury or property damage.

Owner or Owner's representative shall have access to copies of the acknowledgements for the Owner's Program Aircraft.

Registration Number:        N426QS

**Owner has read, understands, and accepts the operational control responsibilities of Owner, including those described in Part 91, Subpart K and in this Acknowledgement.**

Owner:        MIDDLE BAY TRADE, LTD, a/an _Seychelles_ corporation

Signature: _[signed]_        6/15/12
        (date)

Name:        John Babikian

Title:        President

Address:        12914 The Reef, Atlantis Paradise Island, Nassau, Bahamas

Case 1:14-cv-01740-PAC   Document 11-26   Filed 03/19/14   Page 4 of 10

**NETJETS**  04/10
System        **GULFSTREAM IV-SP**
**MASTER DRY-LEASE AIRCRAFT EXCHANGE AGREEMENT**

THIS MASTER DRY-LEASE AIRCRAFT EXCHANGE AGREEMENT (this "Agreement"), is made and entered into by and among NetJets Services, Inc., a Delaware corporation having its principal office and place of business at 4111 Bridgeway Avenue, Columbus, Ohio 43219-1882 ("Services" and/or "Administrator"), and each of those individuals and/or entities whose signatures and seals appear on the signature page(s) affixed hereto (hereinafter collectively referred to as the "Owners" and/or "Participants" and individually as an "Owner" and/or "Participant") as of the dates set forth next to their respective signatures;

**WITNESSETH**:

**WHEREAS**, each Participant owns or leases an undivided interest (the "Interest") in an aircraft set forth next to Participant's name on the Schedule attached hereto (all of said aircraft being together referred to as the "Program Aircraft" and each individual aircraft, as to the Participants thereof only, being referred to as the "Aircraft");

**WHEREAS,** each Participant together with such other parties which own or lease the remaining undivided interests in the Aircraft have agreed to participate in the NetJets Fractional Ownership Program (the "NetJets Program") managed by NetJets International, Inc., a Delaware corporation ("NJI") and to engage NJI as the program manager for that program, and/or to participate in a fractional ownership program managed by NetJets Aviation, Inc., NetJets International, Inc., NJI, Inc., NetJets Large Aircraft Company, or NetJets Aviation Lda. (collectively the "NetJets Program");



**WHEREAS,** each Participant, together with such other parties which own or lease the remaining undivided interests in the Aircraft, desires to enter a dry-lease aircraft exchange arrangement that is part of the NetJets Program, and as such arrangements are defined in Section 91.1001(b) of the Federal Aviation Regulations, and as will be more fully described herein (the "NetJets Dry-Lease Aircraft Exchange Arrangement");

**WHEREAS**, the Participants of a Program Aircraft desire to engage Services to provide administrative services to administer the NetJets Dry-Lease Aircraft Exchange Arrangement;

**WHEREAS**, Participants are desirous of participating in the NetJets Dry-Lease Aircraft Exchange Arrangement, both by dry leasing their Aircraft to other Participants, and also by dry leasing Program Aircraft from other Participants in the NetJets Program; and

**WHEREAS**, Services is willing to provide administrative services to enable the Participants to participate in the NetJets Dry-Lease Aircraft Exchange Arrangement.

**NOW, THEREFORE**, the parties hereto, declaring their intention to enter into and be bound by the terms of this Agreement, and in consideration of the mutual covenants, warranties, promises, agreements and good and valuable consideration set forth herein, hereby covenant and agree as follows:

1.(a)   Participants hereby agree to participate in the NetJets Dry-Lease Aircraft Exchange Arrangement, both as lessors of their respective Aircraft and as lessees of other Program Aircraft provided by other Participants in the NetJets Program, to be bound by all of the provisions of this Agreement, and to dry lease the Aircraft to all other Participants in good standing under this Agreement. Each Participant shall be entitled to the use of another Program Aircraft, on an as available, first come, first served, basis, but in no event shall any Participant be entitled to the use of more than the lesser of (a) one (1) aircraft per day for each forty-nine percent (49%) or lesser Interest owned or (b) five (5) aircraft per day, nor shall any Participant be permitted to use any Program Aircraft outside of the Continental United States, Mexico, Canada and the Caribbean Islands without prior consent of the Administrator. No charge shall be made for right to the dry lease another Participant's Aircraft under this Agreement in exchange for making available to others the dry lease of Participant's Aircraft. Each Participant agrees to make its Aircraft available, during the period in which Participant is a party to the NetJets Dry-Lease Aircraft Exchange Agreement, for dry lease to all other Participants in the NetJets Dry-Lease Aircraft Exchange Arrangement. In no event shall Participant be provided with the dry lease of an aircraft of a

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed as of the day and year set forth next to their respective signatures below.

Participant:   MIDDLE BAY TRADE, LTD, a __Seychelles__ corporation

Signature: _____   __6/15/12__
(date)

Name:   John Babikian

Title:   __President__

Address:   12914 The Reef, Atlantis Paradise Island, Nassau, Bahamas

NETJETS SERVICES, INC.

Signature: _____   __6/15/12__
(date)

Name:   __Christopher Belcher__

Title:   Assistant Secretary

**AIRCRAFT:** Gulfstream IV-SP (GIV-SP)

**SCHEDULE**

| | |
|---|---|
| **Participant:** | MIDDLE BAY TRADE, LTD |
| **Percent Interest:** | 6.25% |
| **Aircraft:** | Gulfstream IV-SP (GIV-SP) |
| **Manufacturer's Serial No.:** | 1426 |
| **FAA Registration No.:** | N426QS |

Initials:

_____
Participant

_____
Administrator

*NETJETS*  
*System*

04/10

## GULFSTREAM IV-SP
## AIRCRAFT ACCEPTANCE FORM

**THIS AIRCRAFT ACCEPTANCE FORM** is executed and delivered by the lessee whose signature appears below ("Lessee") in respect of the Aircraft (as hereinafter defined) in which an interest is being leased by Lessee from NJI Sales, Inc. ("Lessor") pursuant to a certain Fractional Interest Lease Agreement dated June 15, 2012 (the "Lease Agreement"), between Lessor and Lessee. Terms defined in the Lease Agreement shall have their defined meanings when used herein. Based on the following representations made by Lessor, Lessee accepts the Aircraft and its interest therein.

A. The interest of Lessee of the aircraft covered by this Aircraft Acceptance Form (the "Aircraft") consists of the items as set forth in Schedule A below.

B. Lessor confirms that the Aircraft will be registered with the state of Ohio by Sales at its expense.

C. Lessee hereby confirms that the Aircraft is of the size, design, capacity and manufacture selected by it.

D. The transactions contemplated in respect of the Aircraft under the Operative Documents (as defined in the Lease Agreement) shall commence as of June 15, 2012 (the Closing Date or Commencement Date referred to in the Lease Agreement). On the Closing Date the Aircraft was located in Massachusetts.

IN WITNESS WHEREOF, Lessee has executed this Aircraft Acceptance Form on the 15th day of June, 2012.

Lessee: MIDDLE BAY TRADE, LTD

Signature: _____

Name: John Babikian

Title: President

Lessor: NJI SALES, INC.

Signature: _____

Name: Christopher Belcher

Title: Assistant Secretary

Schedule A
Description of Equipment

    The interest is a 6.25% undivided interest in the following aircraft, together with all engines, appurtenances, appliances, parts, instruments, accessions, furnishings and other equipment of whatever nature incorporated in or contained in or attached to the same:

**Aircraft::**                      Gulfstream IV-SP (GIV-SP)

**Manufacturer's Serial No.:**    1426

**FAA Registration No.:**       N426QS

Initials:

_____  
Lessee

_____  
Lessor

**NETJETS**
System                                                                                                        04/10

## FRACTIONAL INTEREST LEASE AGREEMENT

This Fractional Interest Lease Agreement is entered into as of June 15, 2012 (the "Lease") by and between NJI Sales, Inc. ("Lessor"), a Delaware corporation whose address is 4111 Bridgeway Avenue, Columbus, Ohio 43219 and MIDDLE BAY TRADE, LTD ("Lessee"), a Seychelles corporation having its principal office and place of business at 12914 The Reef, Atlantis Paradise Island, Nassau, Bahamas.

### WITNESSETH

**1.    Lease of the Aircraft.** Subject to the terms and conditions contained herein, Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor, for the Lease Term (as defined hereinafter), the undivided percentage interest (the "Interest") in the aircraft (the "Aircraft") which is set forth and described in the Lease Schedule attached hereto (the "Schedule"). Capitalized terms used herein and not otherwise defined are used as defined in the Schedule. As used herein the term Operative Documents shall mean the Fractional Ownership Program Management Services Agreement, this Agreement, the Master Dry-Lease Aircraft Exchange Agreement and the Aircraft Acceptance Form.

**2.    Term.** The term of this Lease (the "Lease Term") shall be as specified in the Schedule, and shall commence on the Delivery Date and expire on the Expiration Date stated herein, unless renewed or earlier terminated in accordance with the provisions herein.

**3.    Rent.**

a)  Lessee shall pay Lessor as the base monthly rental the Fixed Rentals, payable on the First Rental Payment Date, and continuing on the same day of each month thereafter (each, a "Rental Payment Date") until the Expiration Date.

b)  All Fixed Rentals due hereunder shall be "net to Lessor" and Lessee shall remain responsible for the payment of all sales, use and similar taxes or charges imposed by any federal, state or local government or other taxing authority. In the event any such taxes or charges shall be imposed against Lessor, Lessee shall promptly reimburse Lessor therefore including all penalties and interest imposed in connection therewith.

c)  The sum of Fixed Rentals and all other charges, payments and indemnities due hereunder are hereinafter referred to as "Aggregate Rentals." In the event any Aggregate Rental is not received by Lessor within ten (10) business days of the date it is due, Lessee agrees to pay a service charge on any unpaid balance not to exceed, on an annualized basis, the then current prime interest rate, plus 4% on all such delinquent amounts.

**4.    Return.** Upon expiration or earlier termination of this Lease, Lessee shall instruct NJI (as hereinafter defined) to return the Aircraft to Lessor, at Lessor's expense, and Lessor shall accept the Aircraft from NJI. Lessor and Lessee acknowledge that pursuant to a Management Agreement (as hereinafter defined), NJI shall be solely responsible for the condition of the Aircraft (including without limitation its engines, accessories, equipment, parts, components, maintenance, records, manuals, and other documents) during the term of this Lease and upon its return.

**5.    Representations, Warranties and Acknowledgements of Lessor.** Lessor represents, warrants and acknowledges as follows:

a)  Authority.  Lessor has the right, power and authority to enter into this Lease.

b)  Title.  Lessor owns the Interest in Aircraft.

c)  Government Approvals.  No consent or approval of, giving of notice to, registration with, or taking of any other action in respect of or by, any federal, state or local governmental authority or agency (including, without limitation, the Department of Transportation or the FAA) or other person is required with respect to the execution, delivery and performance by the Lessor of this Lease or the Schedule or the consummation

**IN WITNESS WHEREOF**, the parties hereto have each caused this Lease to be duly executed by the respective officers thereunto duly authorized.

| NJI SALES, INC. | MIDDLE BAY TRADE, LTD |
|---|---|
| as Lessor | as Lessee |
| Signature: *[signed]* | Signature: *[signed]* |
| Name: Christopher Belcher | Name: John Babikian |
| Title: Assistant Secretary | Title: President |
| Date: 6/15/12 | Date: 6/15/12 |
| Address: 4111 Bridgeway Avenue<br>Columbus, Ohio 43219 | Address: 12914 The Reef<br>Atlantis Paradise Island<br>Nassau, Bahamas |

7