UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE COMMISSION,

                            Plaintiff,

           - against -

JOHN BABIKIAN,

                            Defendant.

No. 14 Civ. _____

---

## DECLARATION OF ANDREW R. MCFALL

I, Andrew R. McFall, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am over 18 years of age and am employed as a staff attorney in the Division of Enforcement at the United States Securities and Exchange Commission ("Commission").

2.      I submit this declaration in support of the Commission's motion for a temporary restraining order, asset freeze and other relief against John Babikian.  The Commission's Complaint is being filed along with this Declaration.

3.      I make this Declaration based upon personal knowledge, information and belief. The sources of my information and the bases of my belief are documents obtained and reviewed by myself and information provided to me by other members of the Commission's staff.

### Summary

4.      On February 23, 2012, Awesompennystocks.com and its related site Pennystocksuniverse.com issued email touts recommending the purchase of America West Resources, Inc. ("America West") securities.  Both of these websites recommended, or "touted,"

penny stocks, and the Commission's investigation has revealed that the websites operated in this manner for some time before the fraudulent touts at issue here.

5.      The February 23, 2012 touts disclosed that Awesomepennystocks.com and Pennystocksuniverse.com were owned by an entity named Centro Azteca S.A ("Centro Azteca"). I have concluded that Centro Azteca and the websites Awesomepennystocks.com and Pennystocksuniverse.com were instrumentalities of a securities fraud perpetrated by John Babikian, in violation of the anti-fraud provisions of the federal securities laws.

6.      On February 23, 2012, the same day that Awesomepennystocks.com and Pennystocksuniverse.com touted America West, Babikian sold at least 1.3 million shares of America West securities through the omnibus account of a Swiss bank.  The tout issued by Awesomepennystocks.com and Pennystocksuniverse.com did not disclose that Babikian planned to sell at least 1.3 million shares of America West into the buying activity generated through the touts issued by Awesomepennystocks.com and Pennystocksuniverse.com recommending that investors purchase America West securities.

7.      Emergency relief is requested because Babikian is presently seeking to move almost $2.5 million in funds out of the United States and into a bank in the United Arab Emirates.  I further believe that Babikian is likely to move an additional approximately $2.6 million in funds out of the United States related to the pending sale of a home he owns through an alter-ego front company in Los Angeles.  It is my belief and understanding that, once those funds are moved abroad, they will be difficult, if not impossible, to repatriate to the United States to satisfy judgments obtained for violations of the federal securities laws.

## Background on John Babikian

8.      John Babikian is a 26 year-old Canadian citizen.  See Exhibit[1] 43 to this Declaration.

9.      Based on my investigation and a sworn affidavit filed by Babikian's ex-wife in a Canadian legal proceeding, I understand that Babikian utilizes alter-ego front companies and offshore bank accounts to mask his financial activities and hide his assets.  See Exhibits 44 and 45 to this Declaration.  The sworn affidavit filed by his ex-wife states that "Babikian seeks to conceal his identify at all costs . . ." and has "shown both a propensity and an ability to shift assets rapidly and through numerous countries . . . ."  See Exhibit 45, at Affidavit ¶¶ 8 and 37, to this Declaration.

10.     The sworn affidavit filed by his ex-wife further states that Babikian "runs a business by which he acquires, directly and indirectly, large stakes in penny stocks, then 'promoting' these penny stocks through multiple websites, thereby causing the price of these stocks to run up, so that he can 'dump' the stocks with enormous profits."  See Exhibit 45, at Affidavit ¶ 4, to this Declaration.

11.     Based on my investigation and the sworn affidavit filed by Babikian's ex-wife, I understand that Canadian tax authorities have obtained at least one judgment against Babikian in an amount over $4 million.  It is my understanding that, in part because of that tax judgment, Babikian has taken steps to hide his assets, has left the United States and Canada, and is currently residing in an unknown location outside of the United States.  See Exhibit 45, at Affidavit ¶ 16, to this Declaration.

---

[1] Given the large amount of exhibits attached to this Declaration, I have only included the relevant pages of certain voluminous exhibits.  All of the relevant exhibits may be made available, in their entirety, for the Court's review.

**Babikian's Control over Awesomepennystocks.com and Pennystocksuniverse.com**

12.     As set forth below, my investigation has yielded substantial evidence from internet domain registration companies, internet service providers, and providers of mass email distribution services, that connects Babikian to Centro Azteca and the Awesomepennystocks.com and Pennystocksuniverse.com websites at the time of the fraud.

*Evidence that connects Babikian to the registration and renewal of, and payments for, Awesomepennystocks.com and Pennystocksuniverse.com*

13.     Namecheap.com is an internet domain registration company.  On November 5, 2009, an account at Namecheap.com with the username "johnjackinc" was used to register for one year the internet domain names Awesomepennystocks.com and Pennystocksuniverse.com. Records obtained from Namecheap.com show that these registrations were paid for by a credit card with the last four digits 1872.  Other records from the "johnjackinc" account at Namecheap.com show that Babikian utilized a credit card in his name with the last four digits 1872 to pay for transactions done through the "johnjackinc" account.  In addition, the "johnjackinc" account is associated with the email address crazypennystocks@gmail.com.  See Exhibit 1 to this Declaration.

14.     Bank records show that John Babikian had a Visa credit card with the last four digits 1872.  See Exhibit 41 to this Declaration.

15.     Documents obtained from Google show that the subscriber to email address crazypennystocks@gmail.com listed a secondary email address of johnjackinc@gmail.com.  See Exhibit 2 to this Declaration.

16.     Other documents obtained from Google list Babikian's contact email as johnjackinc@gmail.com.  See Exhibit 3 to this Declaration.

17.     I obtained documents from Namecheap.com for another account, which had the username "jadmarketingcompany." The contact name for the "jadmarketingcompany" account at Namecheap.com was Centro Azteca. Records from this account show that a credit card in Babikian's name with the last four digits 1872 and a PayPal account in his name were utilized to pay for transactions done through the "jadmarketingcompany" account. See Exhibit 4 to this Declaration.

18.     On October 6, 2010, the "jadmarketingcompany" account at Namecheap.com was used to renew for one year the registration of the domain name Awesomepennystocks.com. On October 9, 2010, the "jadmarketingcompany" account at Namecheap.com was used to renew for one year the registration of the domain name Pennystocksuniverse.com. See Exhibit 4 to this Declaration.

19.     On October 18, 2011, the "jadmarketingcompany" account at Namecheap.com was used to renew for two years the registration of the domain names Awesomepennystocks.com and Pennystocksuniverse.com. The payment for these registration renewals came from a Paypal account in the name of "John Babikian" and associated with the email address mapleboyone@gmail.com. See Exhibit 4 to this Declaration.

20.     Documents obtained from Google show that the subscriber to email address mapleboyone@gmail.com listed a secondary email address of johnjackinc@gmail.com and an American Express card ending in the four digits 1001 in Babikian's name. See Exhibit 2 to this Declaration. As discussed below, an American Express credit card ending in 1001 in Babikian's name was used to pay for touts distributed by the Centro Azteca account at iContact LLC.

*Evidence that connects Babikian to the mass email distribution service used to*
*distribute touts for Awesomepennystocks.com and Pennystocksuniverse.com*

21.    Vocus, Inc. is the parent company of iContact LLC, which is an email service

provider in the mass email distribution business.  A large .txt file produced to the Commission by

Vocus shows that an account associated with the business name Centro Azteca provided services

for the domain name Awesomepennystocks.com.  Most of the documents produced by Vocus are

.txt files that cannot be attached to this filing in an easily reviewable format.

22.    Another .txt file produced by Vocus shows that, from June 2011 through January

2012, an American Express credit card in Babikian's name ending in the last four digits 1001

was used to pay more than $106,000 to iContact for monthly subscription charges (including the

initial monthly subscription payment for the account) and fees for the distribution of more than

470 sets of email newsletters sent from the Centro Azteca account at iContact.  Babikian's credit

card was not used to pay for the touts on February 23, 2012; however, as explained below, these

touts were paid for with a credit card in the name of a company that appears to be controlled by

Robert Kalfayan, who resides in Laval, Quebec, Canada.  Babikian wired funds to Kalfayan's

company less than a month before the February 23, 2012 tout, and a credit card in Kalfayan's

name was used to pay for some mass email distributions sent from an older

Awesomepennystocks.com account at iContact.

23.    In addition, internet log-in records connect Babikian to the Centro Azteca account

at Vocus on the day of the Awesomepennystocks.com and Pennystocksuniverse.com touts and

on the days before and after the touts.  First, an internet protocol address ("IP address")[2] log and

_____

[2] In high level terms, an IP address is a unique numerical code used to identify a computer or
network of computers.  IP addresses are useful to trace internet activity and can help identify the
geographical location from which internet activity originated.

account activity log produced by Vocus (in .txt file format) show that the Centro Azteca account was accessed repeatedly between January 14, 2012, and May 2, 2012, from IP address 76.94.134.16, and that the account was accessed from that IP address on February 23, 2012, at 2:21 pm EST, minutes before the Pennystocksuniverse.com and Awesomepennystocks.com touts were distributed. A representative from Time Warner Cable told me that this IP address is used for a residential property in Los Angeles, California.[3] As discussed below, Babikian owns several homes in Los Angeles.

24.    Records from Vocus also show that the Centro Azteca account was accessed on May 20, 2012, from IP address 184.163.111.93. I obtained documents from the Canadian internet service provider that was in charge of IP address 184.163.111.93. Those documents show that IP address 184.163.111.93 was assigned to John Babikian, 1300 Rue Alain-Grandbois, Apt. 701, Montreal, Quebec on May 20, 2012. See Exhibit 52 to this Declaration.

25.    Babikian, meanwhile, had a personal brokerage account at Interactive Brokers. See Exhibit 5 to this Declaration. On February 28, 2012, and March 29, 2012, Babikian's Interactive Brokers account was accessed from IP address 76.94.134.16. These were the only times Babikian's Interactive Brokers account was accessed between January 14, 2012 and May 2, 2012. See Exhibit 6 to this Declaration. Again, the Centro Azteca account at iContact was repeatedly accessed from this same IP address during this time period, including just prior to the issuance of the February 23, 2012 tout.

---

[3] The Time Warner representative informed me that Time Warner only retains IP address records for 180 days and, thus, is not able to identify to whom IP address 76.94.134.16 was assigned on February 23, 2012.

26.     On May 20, 2012, Babikian's Interactive Brokers account was accessed from IP address 184.163.111.93. See Exhibit 6 to this Declaration. Again, the Centro Azteca account at iContact was accessed from this same IP address on May 20, 2012.

## Awesomepennystocks.com and Pennystocksuniverse.com Touted America West on February 23, 2012

27.     On March 10, 2014, a representative of OTC Markets provided me with a copy of en email tout issued on February 23, 2012, by Pennystocksuniverse.com. That email tout was distributed by iContact for Pennystocksuniverse.com and had the subject "Brand new pick coming March 1st!" This tout stated: "Today's pick is: AWSR." The tout then described a coal mining company that was producing coal in Utah. See Exhibit 56 to this Declaration.

28.     On March 10, 2014, a representative of OTC Markets provided me with a copy of en email tout issued on February 23, 2012, by Awesomepennystocks.com. That email tout was distributed by iContact for Awesomepennystocks.com and had the subject "Brand new pick coming March 1st!" This tout stated: "AWSR" at the top of the tout and then described a coal mining company that was producing coal in Utah. See Exhibit 8 to this Declaration. This email tout is in all respects identical to the email tout distributed for Pennystocksuniverse.com.

29.     America West traded under the ticker AWSR. The company purportedly was a coal mining company with operations in Utah. See America West Resources, Inc., Form 10-K/A filed June 1, 2012. See Exhibit 9 to this Declaration.

30.     The February 23, 2012 tout from Pennystocksuniverse.com stated: "Pennystocksuniverse.com is owned and operated by Centro Azteca S.A." The tout did not disclose any planned stock sales by Babikian and instead merely stated: "Pennystocksuniverse.com, its operators, owners, employees, and affiliates may have interests or positions in equity securities of the companies profiled on this website, some or all of which may

have been acquired prior to the dissemination of this report, and may increase or decrease these positions at any time." See Exhibit 56 to this Declaration.

31.     The February 23, 2012 tout from Awesomepennystocks.com stated: "Awesomepennystocks.com is owned and operated by Centro Azteca S.A." The tout did not disclose any planned stock sales by Babikian and instead merely stated: "Awesomepennystocks.com, its operators, owners, employees, and affiliates may have interests or positions in equity securities of the companies profiled on this website, some or all of which may have been acquired prior to the dissemination of this report, and may increase or decrease these positions at any time." See Exhibit 8 to this Declaration.

32.     The average trading volume of America West resources prior to the Awesomepennystocks.com tout was only approximately 15,400 shares per day over the prior year. On February 23, 2012, there were no transactions in America West securities until 2:32 pm EST, which appears to be the time Pennystocksuniverse.com released its tout. See Exhibit 56 to this Declaration. Awesomepennystocks.com issued its identical tout minutes later. See Exhibit 8 to this Declaration. Following the issuance of the touts, in 90 minutes of trading, more than 7.8 million shares of America West were traded, which by contract is more than double the total volume that it traded in the whole of the previous year. According to Yahoo Finance, the closing price on February 22, 2012, was $0.29 per share. After the touts were issued on February 23, 2012, the price spiked to $1.80 per share and closed at $1.29 per share.

33.     Documents obtained from Vocus show that on February 23, 2012, the Centro Azteca account at iContact sent out at least four sets of email distributions that began with the subject "Brand new pick coming Mar…" to at least 700,000 email addresses.

34.     Vocus records show that the Centro Azteca account was accessed by IP address 76.94.134.16 at 2:21 pm EST and that access continued until at least 2:35 pm EST.  That access was the last access to the Centro Azteca account prior to the issuance of the Pennystocksuniverse.com and Awesomepennystocks.com touts.  As mentioned above, IP address 76.94.134.16 was used to access Babikian's brokerage account only days later.

35.     Although the records from Vocus show that the February 23, 2012 touts were paid for by a credit card in the name of Quick Contracts Ltd, the Commission has obtained wire records that show that Microtech Ventures Limited—which, as discussed below, appears to be an alter-ego front company for Babikian—wired a total of $119,750 to Quick Contracts Ltd. in two transactions on January 26, 2012, and January 27, 2012, less than a month before the issuance of the Awesomepennystocks.com and Pennystocksuniverse.com touts.

36.     Records also show a wire transfer from Quick Contracts Ltd., with the address listed as Robert Kalfayan, 4562 Dutrisac, Laval, Quebec.  Kalfayan's Canadian driver's license lists his address as 4562 Rue Dutrisac, Laval, Quebec.  See Exhibit 7 to this Declaration.

37.     Kalfayan and Babikian both appear in .txt file records produced by Vocus for an older account at iContact that distributed emails for Awesomepennystocks.com (the "Marketing Integrale account").  Babikian opened the Marketing Integrale account at iContact, and credit cards in both Babikian's and Kalfayan's name paid for touts issued from that account.  The Marketing Integrale account stopped being used at the same time as the Centro Azteca account at iContact was opened.

38.     Kalfayan and Babikian also both received mail at the address listed in the Vocus files for the Marketing Integrale account.  See Exhibits 57 and 58 to this declaration.

## Babikian Obtained at least 1,466,667 Shares of America West and Transferred them to his Swiss Bank

39.     As set forth below, I have determined that, beginning in November 2010, Babikian amassed a significant position in America West.  This position enabled Babikian to earn a substantial profit when he sold his America West stock after the issuance of Awesomepennystocks.com and Pennystocksuniverse.com touts.

40.     On or about November 12, 2010, Babikian invested $500,000 in America West in exchange for a $500,000 promissory note and 416,667 restricted America West shares "as additional consideration."  See Exhibits 10 through 12 and 39 to this Declaration.

41.     On April 20, 2011, America West and Babikian executed a debt conversion agreement whereby Babikian converted the $500,000 promissory note plus accrued interest (total $521,875) into 550,000 of restricted America West shares.  See Exhibits 13 through 16 to this Declaration.

42.     According to wire transfer records, Caldwell Ventures SA, a Panamanian company controlled by Babikian,[4] wired $500,000 from Frankfurter Bankgesellschaft (Schweiz) AG ("Frankfurter Bank") to America West on April 28, 2011, with a note indicating that the payment was for a "PIPE INVESMENT" [sic].  On that same day, America West issued 500,000 restricted America West shares to Babikian.  See Exhibits 17 through 19 and 40 to this Declaration.  According to Yahoo Finance, the closing price of AWSR on that day was $1.00 per share.  Upon issuance of these shares, Babikian was in possession of at least 1,466,667 restricted America West shares in certificate form directly from the issuer.

---

[4] In a document obtained from Sterne Agee, Babikian signed a "Certificate of Sole Proprietorship" indicating that he was the sole signing officer and director of Caldwell Ventures SA.  See Exhibit 17 to this Declaration.

11

43.     On May 4, 2011, Babikian deposited two certificates representing a total of 1,050,000 restricted America West shares into a brokerage account in his name at the Manhattan-based John Thomas Financial (hereinafter "JTF account"), which cleared its transactions through Sterne Agee & Leach, Inc. ("Sterne Agee").  See Exhibit 20 to this Declaration.

44.     On June 8, 2011, Babikian deposited one certificate for 416,667 restricted America West shares into his JTF account.  See Exhibit 21 to this Declaration.

45.     On June 14, 2011, Babikian withdrew 1,466,667 restricted America West shares from his JTF account and had the certificates mailed to one of his homes in Quebec.  On August 9, 2011, Babikian re-deposited those 1,466,667 restricted America West shares into his JTF account.  See Exhibits 21 and 22 to this Declaration.

46.     On August 15, 2011, Babikian had the restricted legend removed from 966,667 of his restricted America West shares (the shares issued in connection with the November 2010 promissory note) and then had those shares transferred into the name of Sterne Agee.  Those shares remained in Babikian's JTF account.  See Exhibits 22 through 24 to this Declaration.

47.     On August 22, 2011, Sterne Agee transferred the 966,667 America West shares into the name of Cede & Co., but the shares remained in Babikian's JTF account.  See Exhibits 25 through 27 to this Declaration.

48.     On October 14, 2011, Babikian transferred his 966,667 legend-free America West shares via the Delivery/Withdrawal at Custodian ("DWAC") process to Brown Brothers Harriman ("Brown Brothers") in New York, New York, as custodian for Frankfurter Bank.

12

Brown Brothers' records reflect that the shares were held in a Six Sis AG[5] account. See Exhibits 28 through 31 to this Declaration.

49.     On November 16, 2011, Babikian had the restricted legend removed from his remaining 500,000 restricted America West shares and then had those shares transferred into the name of Sterne Agee. Those shares remained in Babikian's JTF account. See Exhibits 32 through 34 to this Declaration.

50.     On January 20, 2012, Babikian closed his JTF account after transferring the remaining 500,000 legend-free America West shares to Frankfurter Bank. As above, these shares were sent to Brown Brothers as custodian for Frankfurter Bank. Brown Brothers records reflect that the shares were held in a Six Sis account. See Exhibits 29 through 31 and 35 to this Declaration.

## Babikian Sold at least 1,383,655 Shares of America West on February 23, 2012

51.     A custody transactions report obtained from Brown Brothers shows the receipt of 1,466,667 shares of AWSR that Babikian transferred from Sterne Agee. These shares were received in two parts, 966,667 of these shares were received on October 14, 2011, and 500,000 shares on January 20, 2012. Brown Brothers deposited these shares into custodial omnibus account xxx5317, in the name of Six Sis AG, the Swiss securities depository. Stock record reports also obtained from Brown Brothers show that account xxx5317 had a balance of 217,894 shares prior to when Babikian made his first transfer of 966,667 shares, and a balance of 1,184,561 shares after that transfer. After Babikian transferred his remaining 500,000 shares, there was a balance of 1,684,560 shares in account xxx5317. Other than Babikian's transfers,

---

[5] Six Sis AG is the national Central Securities Depository of the Swiss financial market, similar to the Depository Trust Company in the United States. See http://www.six-securities-services.com/en/home/custody.html.

and an apparently unrelated one share withdrawal, there were no other deposits or withdrawals of AWSR shares in account xxx5317 until a total of 1,601,548 shares were delivered to Apex Clearing for sales that occurred on February 23, 2012, during the approximately 90 minutes of trading that remained in the trading day after Awesomepennystocks.com and Pennystocksuniverse.com issued the relevant touts. Those 1,601,548 shares were sold for total proceeds of $2,217,269. After those shares were delivered to Apex Clearing, account xxx5317 held a remaining position of 83,012 shares of AWSR. Given that there were no other deposits or withdrawals after Babikian's transfers, except for one share, and that only 83,012 shares remained in account xxx5317, the documents show that at least 1,383,655 of the 1,466,667 of Babikan's shares were sold on the day of the America West touts described above. See Exhibits 31, 36, 38, and 64 to this Declaration.

52.    Account statements and trade blotters obtained from Apex Clearing reveal that the entity that received the 1,601,548 shares from Brown Brothers and sold them on February 23, 2012, was Frankfurter Bank. Frankfurter Bank sold 1,601,548 shares for $2,217,269 on February 23, 2012 through its account, xxx-xxx07-91, which was serviced by FINRA member firms, 1st Munich Capital, LLC and First American Capital and Trading Corp. The transactions on the Frankfurter account statements match the share quantity and transaction totals of the shares transferred from Brown Brother account xxx5317. See Exhibits 31 and 36 through 38 to this Declaration.

53.    The 1,601,548 shares sold from the Frankfurter Bank omnibus account were sold for an average of $1.3845 per share. Utilizing that average, Babikian realized illicit gains of $1,915,670 by selling 1,383,655 AWSR shares.

54.     The Commission has determined that it is entitled to a third tier Remedies Act

penalty equal to the gross amount of the pecuniary gain to the defendant, or $1,915,670.

**Babikian's Assets Located in the United States**

***Proceeds from the Sale of the NetJets Interest***

55.     The Vertical International Relief Fund ("Vertical") is a Wyoming purported non-

profit corporation organized on October 29, 2012.  Public records reflect that the President of

Vertical is Leonnel C. Iruke.  According to a lawsuit filed by Babikian's now ex-wife, Iruke is

one of Babikian's attorneys.  The directors of Vertical are Iruke, Kalfayan, and Gerard Babikian.

Based on my investigation, I understand Gerard Babikian to be John Babikan's father.  Gerard

Babikian also has as a Power of Attorney for John Babikian.  See Exhibits 42, 43, and 45 to this

Declaration.

56.     Documents produced by NetJets, Inc.,[6] in response to a subpoena showed that

Babikian, through a company called Middle Bay Trade, Ltd. leased a 6.25% undivided interest in

a Gulfstream IV-SP from NetJets on June 15, 2012.  Babikian signed these documents as

"President" of Middle Bay Trade, Ltd.  See Exhibit 60 to this Declaration.

57.     Also on June 15, 2012, Babikian executed a Letter Agreement with NetJets,

whereby the parties agreed that NetJets would charge Middle Bay $1 per month to lease the

Gulfstream IV-SP in exchange for Babikian agreeing to purchase a 6.25% undivided interest in a

Bombardier Global 5000 airplane for a total of $2,796,875.  On that same day, Babikian and

NetJets entered into a Global 5000 Binder Agreement, which shows that the Middle Bay lease

---

[6] NetJets is a business that offers rentals and leases of, and sells fractional ownership of, private
business airplanes.  Through fractional ownership, NetJets' clients can purchase and own partial
interests in specific airplanes.  These clients are then entitled to utilize those planes for a certain
number of hours each year.

was a temporary measure pending the availability of a Global 5000 interest for purchase. See Exhibits 55 and 62 to this Declaration.

58.     From June 5, 2012 through June 6, 2012, two companies named Arrow Import Export Corporation and Microtech Ventures Limited—both of which, as explained below, appear to be alter-ego front companies for Babikian—wired a total of $3,270,860 to NetJets to fund Babikian's account. See Exhibit 61 to this Declaration.

59.     In her sworn affidavit, Babikian's ex-wife stated that Babikian utilized alter-ego front companies named Arrow Import & Export Corporation and Microtech Ventures Limited to hold bank accounts at HSBC Hong Kong. See Exhibit 45 to this Declaration.  Funds transfer records show that a company named Arrow Import Export Corporation wired funds to Babikian from an account at HSBC Hong Kong.

60.     Funds transfer records reflect that a company named Microtech Ventures listed an address of 1300 Alain Grandbois, Apt. 701, Montreal, Quebec, Canada.  Babikian's ex-wife stated in her sworn affidavit that she and Babikian owned the property located at that address.

61.     Funds transfer records reflect that Microtech Ventures sent funds from an account at HSBC Hong Kong to NetJets, Babikian, Iruke, and Quick Contracts, Ltd. (which, as discussed above, appears to be a front company for Kalfayan). See Exhibit 45 to this Declaration.

62.     On April 16, 2013, Babikian entered into a Lease Termination Agreement with NetJets whereby he terminated the Middle Bay lease in exchange for his agreement to purchase the 6.25% undivided interest in a 2013 Bombardier, Inc. Global 5000 airplane. See Exhibit 63 to this Declaration.

63.     On the same day, April 16, 2013, Babikian, this time under the name Vertical International Relief Fund, entered into an agreement with NetJets whereby Vertical purchased a

6.25% undivided interest in a Bombardier, Inc. Global 5000 airplane with serial number 9483 and FAA registration number N101QS (the "NetJets Share"). The purchase price of $2,796,875 was funded with a portion of the money originally wired to NetJets in June 2012. See Exhibits 46, 55, and 62 to this Declaration.

64.     Babikian signed the NetJets Fractional Program Agreement as the "chief asset manager" of Vertical.[7] Flight records for the Vertical account reflect that Babikian was the lead passenger on every flight but one, where Alima Beg—Babikian's now ex-wife—was listed as the lead passenger. Pursuant to the agreement, all notices "Addressed to Owner" were to be sent to the attention of "Mr. John Babikian" of Vertical International Relief Fund. According to a representative from NetJets, Babikian is the primary point of contact with NetJets regarding this account. See Exhibits 46 and 47.

65.     During phone calls with a representative of NetJets on March 7, 2014, March 8, 2014 and March 10, 2014, the NetJets representative communicated the following information to members of the Commission staff:

- Babikian recently inquired about selling the Vertical NetJets Share to a third party;

- The timing of the request appeared unusual because Babikian had taken possession of the NetJets share recently in June 2013;

- NetJets determined to exercise its contractual right of first refusal to repurchase the NetJets share;

---

[7] His signature on the NetJets documents is consistent with his signature on documents obtained from Sterne Agee, which was the clearing firm for Babikian's JTF brokerage account. See Exhibit 59 to this Declaration.

- NetJets and Vertical (through Babikian) recently executed a repurchase agreement whereby NetJets has agreed to repurchase the NetJets Share for approximately $2.5 million, an amount less than fair market value;

- Pursuant to that repurchase agreement, NetJets is obligated to remit the approximately $2.5 million to Babikian within two business days;

- Babikian has requested that NetJets wire the proceeds to an account in the name of "Elementos Ltd." at a financial institution in the United Arab Emirates named Emirates NBD;

- NetJets indicated that it is unusual to receive a request to wire large sums to offshore financial institutions for accounts held in names that differ from the name of the NetJets customer;

- Babikian has contacted NetJets repeatedly to inquire about the status of the wire transfer; and

- NetJets intends to wire the money, per Babikian's instructions, to the account in the United Arab Emirates imminently.

66.    It will be difficult, if not impossible, to repatriate these funds if they are wired to the United Arab Emirates.

*Proceeds from the Sale of Real Estate in the United States*

67.     In September 2013, Alima Beg—Babikian's now ex-wife—filed lawsuits against him in Los Angeles, California and Montreal, Quebec, Canada.[8]  Beg filed a sworn affidavit along with her lawsuit in Montreal.  Among other things, Beg's sworn affidavit stated that she and Babikian had two homes in Los Angeles, California.  One of those homes is located at 642 N. Laurel Avenue, Los Angeles, CA and the other at 1401 Londonderry Place, Los Angeles, CA. Beg alleged that Babikian transferred ownership of the home at 642 N. Laurel Avenue into the name of a front company he controlled called Middlebay Trade Ltd. ("Middlebay"), which allegedly is a Seychelles Island corporation with an unknown date of incorporation.  Beg alleged that Babikian purchased the property located at 1401 Londonderry Place with $6 million in funds from the HSBC Hong Kong accounts of Arrow Import & Export Corporation and Microtech Ventures Ltd. and immediately put the home into the name of another front company Babikian controlled called Oriwa Villas Ltd. ("Oriwa"), which purportedly is a Guatemalan entity with unknown date of incorporation.  See Exhibits 44 and 45 to this Declaration.

68.     My investigation has substantiated Beg's claims regarding Babikian's ownership of the foregoing real property through alter-ego front companies.  Real property records obtained from Westlaw show that Middlebay is the record owner of 642 N. Laurel Avenue, Los Angeles, CA.  These records also reflect that Babikian acquired the property on December 1, 2010 for $2,225,000 in cash, and transferred it to Middlebay on June 2, 2011 in a "nominal" cash transaction.  See Exhibits 49 and 53 to this Declaration.

---

[8] To the extent the Commission's investigation has been able to uncover evidence regarding the allegations in Beg's sworn affidavit and lawsuits, all of that evidence has corroborated Beg's allegations.  The Commission's investigation has not yet uncovered evidence showing any of Beg's allegations to be false.

69.    Babikian's control of Middlebay is also evident through the fact that, as discussed above, Babikian signed on behalf of and listed himself as the president of a company named Middle Bay Trade Ltd., a Seychelles corporation, in various documents obtained from NetJets. See Exhibits 51, 55, 60, 62, and 63 to this Declaration.  According to Beg's sworn affidavit, the address for Middlebay Trade Ltd. is 12914 The Reef Atlantis, Paradise Island, Nassau, Bahamas. Beg's affidavit indicates that this was a condominium owned and used by her and Babikian. Beg's affidavit further provides that Babikian owns a total of 9 condominiums at The Reef Atlantis.  NetJets records list an address for Middle Bay Trade Ltd. as 12914 The Reef Atlantis, Paradise Island, Nassau, Bahamas.  See Exhibits 45 and 60 to this Declaration.  Based on these facts, it is my opinion that "Middle Bay Trade Ltd." and "Middlebay Trade Ltd." are the same entity.

70.    On March 9, 2014, I accessed the internet website RedFin.com, an online real estate brokerage and searched for 642 N. Laurel Avenue, Los Angeles, CA.  RedFin.com indicated that 642 N. Laurel was listed for sale on October 30, 2013 (MLS#13-715573).  The Redfin.com listing states that a sale of the property is "pending" with a listed price of $2,595,000 million.[9]  See Exhibit 54 this Declaration.

71.    Based upon conversations with other experienced investigators at the Commission, and based upon the facts uncovered during my investigation, it is my belief Babikian will move this money offshore if the sale is completed, thereby making the funds unavailable and difficult, if not impossible, to repatriate to the United States.

72.    Real property records obtained from Westlaw reflect that Oriwa's address is 642 N. Laurel Avenue, which as mentioned above is one of Babikian's homes.  These documents

---

[9] http://www.redfin.com/CA/Los-Angeles/642-N-Laurel-Ave-90048/home/7103652

also show that Oriwa holds title to 1401 Londonderry Place, Los Angeles, CA, which Babikian purchased on July 24, 2012 for $6 million.  See Exhibit 48 and 49 to this Declaration.

73.     Real property records obtained from Westlaw reflect that Middlebay owns farmland located at 4455 Emerson Loop Rd., The Dalles, OR with a "market total value" of $448,250.  NetJets flight records for the Vertical account reflect that Babikian flew to The Dalles, OR on February 6, 2013 and August 7, 2013.  See Exhibits 47 and 50 and to this Declaration.

I declare under the penalty of perjury that the foregoing is true and correct.

March 12, 2014     _____

Andrew R. McFall