UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

  -against-

JOHN BABIKIAN,

          Defendant.

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-21-14

14 Civ. 1740 (PAC)

ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

    The Securities and Exchange Commission (the "SEC") brings this action against Defendant John Babikian ("Babikian"), a Canadian citizen whose whereabouts are currently unknown, for violations of 10(b) of the Securities Exchange Act, SEC Rule 10b-5, and 17(a) of the Securities Act based on Babikian's alleged involvement in a pump and dump scheme. According to the Complaint, between November 2010 and April 2011, Babikian bought nearly 1.5 million shares of stock in America West. Babikian readied himself to sell the shares beginning in August 2011, and then on February 23, 2012, Babikian sent out "touting" emails to 700,000 email addresses advertising America West as his stock "pick" of the day. Recipients of the emails bought extraordinarily high volumes of America West stock that day, and the price skyrocketed from $0.29 per share to $1.29 per share at closing (at one point reaching an all-time high of $1.80 per share). When the stock price hit its peak, Babikian pulled the plug, sold his shares, and made approximately $1.9 million.

On March 13, 2014, the SEC filed, and the Court signed, a Temporary Restraining Order ("TRO") and Order to Show Cause which: (1) froze Babikian's assets, including those in the possession of NetJets, Inc. ("NetJets"), and properties located at 642 N. Laurel Ave. and 1401 Londonderry Place in Los Angeles, CA, and 4455 Emerson Loop Road, The Dalles, OR; (2) ordered Babikian to submit a verified written accounting of his assets within three business days; (3) prohibited destruction of evidence; (4) permitted alternative service of process on Babikian via email; (5) ordered expedited discovery, including responses to the SEC's requests for admissions and interrogatories within three business days; and (6) prohibited Babikian and his officers, agents, employees and attorneys from recommending the purchase of any U.S. publicly traded or quoted stock, without simultaneously disclosing any and all plans or intentions to sell all or part of the holdings.

On March 13, 2014, the Court also issued a prejudgment writ, pursuant to 28 U.S.C. §§ 3104 & 3205, garnishing all of Babikian's proceeds from the sale of a fractional share of NetJets in the name of Vertical International Relief Fund. The Court also issued a prejudgment writ pursuant to 28 U.S.C. § 3102 attaching properties at 642 N. Laurel Ave. and 1401 Londonderry Place in Los Angeles, CA, and 4455 Emerson Loop Road, The Dalles, OR.

The SEC moves for a preliminary injunction and to preserve the relief obtained in the TRO and writs pending a final determination on the merits of the underlying securities fraud action. At a hearing held on April 8, 2014, Babikian consented to an extension of the TRO, pending the resolution of the SEC's motion. The parties also stipulated to, and the Court ordered, the deposit of Babikian's $2,545,289.55 interest in NetJets into the Registry of the Court, and the dismissal of NetJets as a garnishee.

Babikian maintains, however, that the SEC has over-reached in its motion for a

preliminary injunction and its freeze, garnishment, and attachment of his assets: (1) the SEC does not submit admissible evidence to support a preliminary injunction; (2) the garnishment and attachment is not authorized under the Federal Debt Collection Procedure Act ("FDCPA") because Babikian does not owe a debt to the United States; and (3) the amount of assets being frozen, garnished, and attached far exceeds the sum the SEC claims Babikian must disgorge.

A preliminary injunction is appropriate in this case. Babikian concedes that "if the Court finds that the SEC has submitted admissible evidence sufficient to establish a likelihood of success, [he] does not object to the entry of a preliminary injunction preventing him from future violations of the federal securities law." (Def.'s March 31, 2014 Resp. Br., p. 4.) "[I]njunctions sought by the SEC do not require a showing of irreparable harm or the unavailability of remedies at law." *Smith v. SEC*, 653 F.3d 121, 127 (2d Cir. 2011). The Court may grant preliminary injunctive relief against future securities laws violations upon a "substantial showing of likelihood of success as to both a current violation and the risk of repetition." *SEC v. Cavanagh*, 155 F.3d 129, 132 (2d Cir. 1998). The evidence establishes a strong likelihood that Babikian committed securities fraud through the alleged pump and dump scheme. *See United States v. Levy*, 2013 WL 3832718 (S.D.N.Y. July 15, 2013)(describing the trial in which defendants Donna and David Levy were found guilty of criminal securities fraud charges for engaging in a similar pump and dump scheme). Babikian's primary defense to the allegations is that his emails touting America West stock had a disclaimer warning investors that the touter may hold an interest in the security. But cautionary language that does not expressly warn of the risk that caused investors' losses, as here, is insufficient to disclaim liability. *See Johnson v. Sequans Commc'ns, Inc.*, 2013 WL 214297, at *9 (S.D.N.Y. Jan. 17, 2013) (quoting *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 359 (2d Cir. 2002)). There is also a high risk that, unless enjoined,

Babikian may commit the alleged fraudulent acts again, given his control of penny stock websites and his aptitude at using anonymous email accounts, alter-ego front companies, and mass email distribution systems.

Babikian's evidentiary objections are unavailing at this stage. The purpose of a preliminary injunction is to preserve the positions of the parties until a trial on the merits can be held. Consequently, preliminary injunctions are typically granted on the basis of procedures that are less formal than at trial, and courts may rely on evidence that is objectionable hearsay or less than complete. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *Mullins v. City of New York*, 626 F.3d 47, 51-52 (2d Cir. 2010).

Babikian next argues that the garnishment and attachment of his assets at this stage is not authorized by the FDCPA. There is substance to this argument. The SEC argues that the FDCPA authorizes garnishment and attachment as prejudgment remedies for cases that merely assert claims for a debt; the FDCPA applies even though it has not been established that Babikian owes anything. No circuit court has yet held that claims for penalties and disgorgement for the first time, as in this case, are "debts" for which prejudgment remedies may be sought under the FDCPA.[1] Second Circuit cases such as *Board of Governors of the Fed. Reserve Sys. v. Pharaon*, 169 F.3d 110 (2d Cir. 1999), and *NLRB v. EDP Medical Computer Systems*, 6 F.3d 951 (2d Cir. 1993) deal only with existing financial obligations (a Notice of Assessment for a

---

[1] It is worth noting that the term "claim" in the context of a "claim for a debt" is only defined in Subchapter D of the FDCPA, which applies to fraudulent transfers. This suggests that the FDCPA provides equitable prejudgment remedies when penalties and other money is sought for the first time in the *fraudulent transfer* context, but not in other contexts. *See SEC v. ICP Asset Management*, 2012 WL 204098, at *4 (S.D.N.Y. Jan. 24, 2012). This suggestion is consistent with the Supreme Court's reasoning in *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999): "[T]here is absolutely nothing new about debtors trying to avoid paying their debts ... The law of fraudulent conveyances [] was developed to prevent such conduct; an equitable power to restrict a debtor's use of his unencumbered property before judgment was not." *Id.* at 322.

$37 million civil penalty the defendant owed to the Board of Governors of the Federal Reserve, and a backpay award the NLRB held that an employer owed, respectively). The financial obligations at issue in those cases were consistent with the FDCPA definition of a debt as "an amount that is owing to the United States." 28 U.S.C. § 3002(3). Conversely, no prior notice of assessment or proceeding has established that Babikian presently owes money to the United States in this action.

Given the lack of authority on point, and without deciding whether the FDCPA's prejudgment remedies apply in this action, the Court sustains the writs issued here on equitable grounds. "Section 22(a) of the Securities Act of 1933 and Section 27 of the Exchange Act of 1934 'confer general equity powers upon the district courts' that are 'invoked by a showing of a securities law violation.'" *Smith*, 653 F.3d at 127 (citations and quotations omitted).[2] "[O]nce the equity jurisdiction of the district court properly has been invoked, the court has power to order all equitable relief necessary under the circumstances." *SEC v. Materia*, 745 F.2d 197, 200 (2d Cir. 1984). The Court's equitable powers under the Securities Act and the Exchange Act are sufficient to garnish Babikian's interest in NetJets and attach his three properties. Equitable prejudgment remedies are available if they are reasonable measures to preserve the status quo in aid of the ultimate equitable relief sought. *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 289-90 (1940). Here, while part of the relief the SEC seeks are civil penalties, the primary relief sought sounds in equity: a permanent injunction preventing Babikian, his employees and agents from recommending publicly traded securities, and disgorgement of profits attributable to the fraud. *See Cavanagh*, 445 F.3d at 116-17 (holding that disgorgement is an equitable

---

[2] Section 21(d) of the Exchange Act and 20(b) of the Securities Act provide the bases for the Court to provide injunctive relief. *See* 15 U.S.C. § 78u(d) and 15 U.S.C. § 77t(b), respectively.

remedy).[3]

The prejudgment remedies the Court ordered are especially necessary given Babikian's failure to comply with the Court's March 13 TRO. Babikian (1) never submitted a verified written accounting of his assets; (2) made no disclosure of where his assets are located; and (3) failed to state the value of his assets, including the value of his interest in the three properties attached by the Court. It is apparent that Babikian uses a number of corporate entities, but he failed to disclose which alter-egos hold his assets. Finally, Babikian has failed to respond to the SEC's discovery requests. His counsel's claim that he has been busy with other matters is not an adequate explanation for the complete failure to comply with the Court's Order. Babikian's obvious failure to provide this vital information makes the argument that the SEC has seized too much seem hollow.

Furthermore, the prejudgment remedies in this case ensure "that any funds that may become due can be collected." *SEC v. Unifund SAL*, 910 F.2d 1028, 1041 (2d Cir. 1990). The Second Circuit has affirmed prejudgment remedies securing assets necessary to cover civil penalties, and not just disgorgement. *See Unifund SAL*, 910 F.2d at 1042 ("Our reluctance in *Manor Nursing Centers* to permit a freeze order to reach funds not normally forfeitable is not authority for denying the Commission the opportunity to collect funds that Congress has expressly determined [in Securities Act § 21A] are appropriate for forfeiture.") The garnishment was stipulated by the parties and the garnishee, and the attachment of property is justified since there is a risk that Babikian, who has already used a complex web of alter-ego companies to conceal assets, will sell his properties, and dispose of or otherwise secrete assets necessary to pay

---

[3] The Supreme Court's decision in *Grupo Mexicano* does not bar equitable prejudgment remedies in a case that claims equitable relief as well as money damages. *See SEC v. ETS Payphones, Inc.*, 408 F.3d 727 (11th Cir. 2005); *see also Cavanagh*, 445 F.3d at 116-17.

a judgment. The broader asset freeze is a temporary measure, justified by the likelihood that Babikian violated the securities law, *see Unifund SAL*, 910 F.2d at 1041, which prevents disposal of assets pending an action for accounting. "[The] order imposing a temporary freeze of assets is [] necessary simply to preserve the status quo while an investigation is conducted to clarify the sources of various funds." *Commodity Futures Trading Comm'n v. Morgan, Harris & Scott Ltd.*, 484 F.Supp. 669, 678 (S.D.N.Y. 1979) (citing *SEC v. Manor Nursing Ctrs. Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972)).

Because Babikian has failed to comply with the Court's discovery order, it is impossible to know precisely how much money Babikian obtained as a result of his allegedly fraudulent activity, where his allegedly ill-gotten gains are kept, and the value of his assets. Absent specific evidence to this effect—information Babikian has yet to produce—Babikian cannot show that the form and scope of the Court's asset seizures are unwarranted.

## CONCLUSION

For the reasons above, the Court grants Plaintiff's motion for a preliminary injunction. The Court sustains the prior writ of garnishment (to which the parties have stipulated) and writ of attachment. The Court repeats its prior order for an accounting and expedited discovery.

Dated: New York, New York
      April 21, 2014

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge