**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

**v.**

**JOHN BABIKIAN,**

**Defendant,**

**Case No. 14-CV-1740 (PAC)**

**PLAINTIFF SECURITIES AND EXCHANGE COMMMISSION'S OPPOSITION TO "DEFENDANT JOHN BABIKIAN'S MOTION FOR RECONSIDERATION OF THE COURT'S RULING REGARDING PREJUDGMENT ASSET FREEZE AND ISSUING WRITS TO SATISFY PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES BASED ON ERROR OF LAW"**

Dated: May 12, 2014

Matthew P. Cohen
Michael J. Roessner

SECURITIES AND EXCHANGE COMMISSION
100 F Street N.E., Mailstop #5985
Washington, DC 20549
Tel: (202) 551-7276 (Cohen)
cohenma@sec.gov

## TABLE OF CONTENTS

I. BACKGROUND ....................................................................................................2

II. ARGUMENT ....................................................................................................4

A. The legal standards governing a motion for reconsideration. ……………………..…5

B. Babikian's motion must fail because he has not pointed to any controlling decisions or data that this Court overlooked. ……………………………………..6

C. This Court correctly ruled that Babikian failed to show cause why the Commission's equitable relief should not be granted. ……………………………8

D. The prejudgment writs also are warranted under the FDCPA. …………………12

III. CONCLUSION ……………………………………………………………...13

Plaintiff Securities and Exchange Commission respectfully submits this Opposition to *"Defendant John Babikian's Motion for Reconsideration of the Court's Ruling Regarding Prejudgment Asset Freeze and Issuing Writs to Satisfy Plaintiff's Claims for Punitive Damages Based on Error of Law"* (docket #34, cited herein as "Mot.").[1] For the reasons set forth below, the motion should be denied. Pursuant to Local Civil Rule 6.3, the Commission also respectfully submits that reargument on this matter is unnecessary.

## I. BACKGROUND

This Court is now familiar with the facts underlying Babikian's "scalping" of America West stock and with his aptitude for using numerous alter-ego front companies to house and conceal assets. On March 13, 2014, the Court granted the Commission's requests for a temporary restraining order freezing assets and for prejudgment writs of attachment pursuant to the Federal Debt Collection Procedures Act (FDCPA) (docket #4, hereinafter the "March 13 Order"). To "effectuate and ensure compliance with the freeze imposed on the Defendant's assets," *id.* at 2, the March 13 Order required Babikian to complete, by March 18, 2014, a verified written accounting of his accounts and assets. The March 13 Order also granted the Commission's application for expedited discovery concerning Babikian, his assets, and activities. The Commission then served interrogatories, document requests, and requests for admission which Babikian was required to answer by March 20, 2014. This discovery was designed, in part, to aid the Commission in identifying the full extent of the fraudulent scheme and the front companies in whose names Babikian may be concealing his assets and ill-gotten

---

[1] Babikian incorrectly refers to the statutorily-authorized civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] as "punitive damages." The Securities Act and Exchange Act clearly permit courts to assert "money penalties"—not punitive damages—for securities violations. *See* Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

gains, in furtherance of the Commission's application for a preliminary injunction and asset freeze during the pendency of this case.

Babikian failed to provide the court-ordered accounting of his assets, and he failed to comply with the Court's expedited discovery order. Babikian, however, vigorously challenged the Commission's application for a preliminary injunction, the prejudgment writs, and the asset freeze order. Following briefing by the parties and oral argument, on April 21, 2014, this Court issued an order granting the Commission's request for a preliminary injunction, holding that "[t]he evidence establishes a strong likelihood that Babikian committed securities fraud through the alleged pump and dump scheme." (Apr. 21 Order at 3.) With respect to the prejudgment writs, without deciding whether the FDCPA's remedies apply in this action, the Court sustained the writs on equitable grounds. The Court also upheld the asset freeze order, which included within its scope the same properties named in the writs. In doing so, the Court explained that this application of its equitable authority was particularly warranted under the circumstances of this case, even where approximately $2.5 million of Babikian's garnished funds already were on deposit with the Court's registry, in order to preserve the *status quo*:

> The broader asset freeze is a temporary measure, justified by the likelihood that Babikian violated the securities law, which prevents disposal of assets pending an action for accounting. … Because Babikian has failed to comply with the Court's discovery order, it is impossible to know precisely how much money Babikian obtained as a result of his allegedly fraudulent activity, where his allegedly ill-gotten gains are kept, and the value of his assets. Absent specific evidence to this effect – information Babikian has yet to produce – Babikian cannot show that the form and scope of the Court's asset seizures are unwarranted.

(Apr. 21 Order at 7) (internal citation omitted). The Court's April 21 Order also reiterated the prior order for an accounting and expedited discovery.

Following issuance of the Court's April 21 Order (and after being twice-ordered to do so), Babikian submitted responses to the accounting order and to the Commission's written discovery requests. In *Defendant John Babikian's Responses to Order for Accounting and Other Personal Financial Information* (docket #32, filed Apr. 24, 2014) (hereinafter "Resp. to Account. Order"), Babikian took the position that, because the proceeds from NetJets had been deposited in the Court's registry (a fact known to the Court and specifically referenced in the Court's April 21 Order), "no further accounting is necessary." (Resp. to Account. Order at 13.) Babikian further asserted his Fifth Amendment privilege in response to each of the specific requests set forth in the Court's March 13 Order directing the accounting. (*Id.* at 13-14.) Similarly, in his responses to the Commission's written discovery, Babikian asserted his Fifth Amendment privilege in response to each and every request for admission, interrogatory, and document request. In doing so, Babikian refused to answer discovery requests concerning his current residence, his ownership and sale of America West stock, and his exertion of control over alter-ego front companies[2] -- vital information that this Court held was necessary to accurately evaluate Babikian's challenges to the form and scope of the asset freeze and writs.

## II. ARGUMENT

Babikian does not appear to challenge the Court's ruling that "[t]he evidence establishes a strong likelihood that Babikian committed securities fraud through the alleged pump and dump

---

[2] *See, e.g.,* Ex. 1, *Defendant, John Babikian's Objections to and Responses to Plaintiff's Second Set of Interrogatories and Requests for Admission*, at 4 (asserting Fifth Amendment privilege in response to an interrogatory requiring Babikian to "[i]dentify your present home and business address(es), telephone number(s), and facsimile number(s)"); Ex. 2, *Defendant, John Babikian's Objections to and Responses to Plaintiff's First Set of Interrogatories, Document Requests and Requests for Admission*, at 11-12 (asserting Fifth Amendment privilege in response to requests that Babikian "[p]oduce all documents that relate to your acquisition, ownership, and sale of America West stock," and that, "[f]or any entities that you own or beneficially own, or over which you exert direct or indirect control, regardless of whether in the United States or a foreign country, produce documents sufficient to show your ownership, beneficial ownership, interest, and/or control").

scheme." (Apr. 21 Order at 3.) Nor has he sought to avail himself of the Court's earlier invitation to exempt from the asset freeze "[n]ecessary and reasonable living expenses … upon good cause shown." (Mar. 13 Order at 4.) Rather, Babikian once again mounts a broadside challenge to this Court's asset freeze order and writs. The standards governing motions for reconsideration do not countenance such second-bites at the apple absent narrow circumstances. Those circumstances are not present here, and, as previously argued, the FDCPA provides an alternative source of authority for the prejudgment writs. Accordingly, the motion for reconsideration should be denied.

**A. The legal standards governing a motion for reconsideration.**

Motions for reconsideration such as Babikian's are governed by Local Civil Rule 6.3. "The standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *DGM Investments, Inc. v. New York Futures Exchange, Inc.* 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (quoting *Schrader v. CSX Transp., Inc*. 70 F.3d 255, 257 (2d Cir. 1995)). As formulated by this Court and others, a motion for reconsideration is appropriate only if there has been an intervening change in controlling law, new evidence becomes available, a clear error has been made, or the opinion creates a manifest injustice. *See First Mercury Ins. Co. v. 613 N.Y. Inc.*, No. 11-CV-2819 (PAC), 2013 WL 1732793, at *1 (S.D.N.Y. Apr. 22, 2013).

A motion for reconsideration "is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *Davey v. Dolan*, 496 F. Supp. 2d 387, 389 (S.D.N.Y. 2007). Accordingly, courts in this district hold that Local Rule 6.3

must be narrowly construed and strictly applied to avoid repetitive arguments and duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for an appeal. *See McAvey v. Orange-Ulster Boces*, No. 07-CV-11181 (RWS), 2012 WL 161839, at *1 (S.D.N.Y. Jan. 18, 2012) (collecting authorities); *Hinds County, Miss. V. Wachovia Bank N.A.*, 700 F. Supp.2d 378, 407 (S.D.N.Y. 2010) ("Reconsideration of a previous order by the court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.") (citation and internal quotation marks omitted). Whether to grant a motion for reconsideration is within the discretion of the district court, but "reconsideration requires that the 'court … have a clear conviction of error with respect to a point of law on which its previous decision was predicated.'" *In re Fannie Mae 2008 ERISA Lit.*, Nos. 09-CV-1350 (PAC), 2014 WL 1577769, at *3 (S.D.N.Y. Apr. 21, 2014) (quoting *Green v. Beer*, No. 06-CV-4156 (KMW), 2009 WL 3401256, at *2 (S.D.N.Y. Oct. 22, 2009)).

### B. Babikian's motion must fail because he has not pointed to any controlling decisions or data that this Court overlooked.

Babikian's reconsideration argument, in essence, is that this Court erred in exercising its equitable authority to order a temporary asset freeze in a case involving claims for disgorgement and civil penalties when there already is a sum on deposit in the Court's registry that exceeds the Commission's minimum estimate of its disgorgement remedy. This is nearly identical to the argument that Babikian advanced in his earlier Response to the order to show cause why a preliminary injunction should not be granted. *See* Def.'s Resp. to Order to Show Cause (docket #21) at 16 ("In any event, whatever amount the Court finds to be the likely disgorgement amount to be proven in this case, if any, the NetJets garnishment of $2,545,289.55 far exceeds that amount and should, upon transfer to the Court registry of that amount, should [*sic*] fully satisfy the SEC's legitimate need for prejudgment relief in this case. All other prejudgment remedies …

should be vacated … .”). Babikian’s argument was not lost on this Court. To the contrary, in its April 21 Order, this Court squarely acknowledged (and rejected) Babikian’s central claim that the Commission “over-reached” and that the frozen assets “far exceed[]” the SEC’s disgorgement remedy. (Apr. 21 Order at 2-3.)

In recycling this argument for his motion to reconsider, Babikian does not rely on any new controlling law or evidence. Rather, Babikian relies on the same legal authority that he briefed in his earlier Response and that he argued at the preliminary injunction hearing: the Supreme Court’s decision in *Grupo Mexicano de Desarrollo v. Alliance Bond Fund, Inc*., 527 U.S. 308 (1999). While Babikian asserts that this Court mis-read *Grupo Mexicano,* he does not – because he cannot – maintain that this Court *overlooked* controlling authority. As set forth more fully below, this Court correctly recognized that the ruling in *Grupo Mexicano* does not bar equitable prejudgment remedies in a case that claims equitable relief as well as civil money penalties. (Apr. 21 Order at 6 n.3.) This Court further made clear that its April 21 Order was an appropriate exercise of equitable authority on the circumstances of the instant factual record to preserve the *status quo*, where Babikian had failed to provide responses to the court-mandated accounting and discovery. (*Id.* at 6-7.) Thus, while Babikian may “not like the way the original motion was resolved,” *Davey*, 496 F. Supp. 2d at 389, his motion for reconsideration is the sort of “rearguing,” *id.*, that does not provide a basis for relief. *See Lichtenberg v. Besicorp Grp. Inc.,* 28 Fed. Appx. 73, 75 (2d Cir. 2002) (affirming dismissal of reconsideration motion where movant “failed to demonstrate that the [lower] court overlooked any fact of consequence or controlling legal authority at the time the court decided [the case]”).

**C. This Court correctly ruled that Babikian failed to show cause why the Commission's equitable relief should not be granted.**

In any event, Babikian's second bite at the apple fares no better than his first. Perhaps in an effort to overcome what he recognizes to be an onerous standard of review governing motions for reconsideration, Babikian frames the Court's April 21 Order as one that expressly relies upon equitable authorities to freeze $11 million in known assets, far in excess of the Commission's disgorgement claim, to secure prejudgment claims for civil penalties. (Mot. at 2.) From this point of departure, Babikian asserts that the Court's ruling is in contravention of the holding in *Grupo Mexicano* and should be vacated.

As an initial matter, Babikian's central factual premise – that the Commission is plainly over-secured – is flawed. While it is correct that the Commission has calculated the disgorgement remedy to be at least $1,915,670 plus prejudgment interest, that figure is a floor based upon a conservative assumption that Babikian sold approximately 1.38 million shares of America West stock at an average per-share sales price. In fact, the record in this case shows that over 1.6 million America West shares were sold from the omnibus account of the Swiss bank from which Babikian sold his shares on the day of the internet touts. (*See* Docket #15, McFall Decl. ¶¶ 51-52.) In discovery in this matter, the Commission will endeavor to determine the full scope of Babikian's stock sales and the full extent of his ill-gotten gains – including any gains from sales executed from other accounts, in the days and weeks that followed the email touts of America West stock.

Babikian couples his *understatement* of the Commission's probable disgorgement remedy with an *overstatement* regarding the extent to which the known assets in this case secure the Commission's claims, while continuing to refuse to provide an accounting regarding those very same assets (and any others). This posture puts Babikian on a collision course with the

principle that, "[t]o persuade a court to unfreeze assets, the defendant must establish that the funds he seeks to release are untainted *and* that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial." *SEC v. Stein*, No. 07-CV-3125 (GEL), 2009 WL 1181061, at *1 (S.D.N.Y. Apr. 30, 2009) (emphasis added). This is a burden Babikian cannot meet. Apart from the NetJets proceeds, it remains the case that the Commission has identified only three Babikian properties, two in California and one in Oregon, each of which is owned in the name of an alter-ego front company. And it remains the case that, without Babikian's verified accounting or answers to written discovery, the Commission is unable to confidently represent whether the writs on these three properties, together with the garnishment of NetJets proceeds, in fact render the Commission over-secured. *See Plaintiff's Reply to Defendant John Babikian's Response to Order to Show Cause and Emergency Motion to Dissolve and/or Modify the Temporary Restraining Order and Asset Freeze, and to Defendant's Evidentiary Objections* at 9-10 & n.7 (docket #23, filed Apr. 3, 2014). If anything, recent events cause the Commission to have even *less* certainty in its probable security than it had at the time of the preliminary injunction hearing in this matter. That is because the Commission just recently learned that Babikian was attempting to transfer what was believed to be the most valuable of the three real properties covered by the Court's March 13 Order shortly before this action was initiated, and that such efforts may have continued after March 13. This property, 1401 Londonderry Place, Los Angeles, California, is now the subject of ongoing state court litigation, and numerous questions abound.[3]

---

[3] Babikian purchased the real property located at 1401 Londonderry Place, Los Angeles, California, in 2012, within a few months of the America West pump and dump scheme for $6 million. (*See* Docket #15, McFall Decl. ¶ 72.) The Commission just recently learned that the Babikian front company that owns 1401 Londonderry Place, variously written as Oriwa Villas S.A. or Oriwa Villas Ltd. ("Oriwa"), was attempting to sell the property to an entity called Tracerain Capital, LLC ("Tracerain") before the Commission initiated this action. Six days after this action was filed, Tracerain filed suit against Oriwa in

Even if some of the seized assets (whose value, again, is not known) ultimately may satisfy the Commission's civil penalty claims, that does not change the analysis. The holding in *Grupo Mexicano* is carefully circumscribed, providing specifically that the general equitable powers of the federal courts do not include the authority to issue preliminary injunctions in actions *solely* at law: "This case presents the question whether, *in an action for money damages*, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which *no lien or equitable interest is claimed*." 527 U.S. at 310 (emphasis added). Enforcement actions brought by the Commission do not seek money damages. The Commission, rather, seeks equitable disgorgement remedies and civil penalties for which the Securities Act and the Exchange Act direct specific methods of calculation. *See* 15 U.S.C. §§ 77t(d) and 78u(d)(3). In any event, in the years since *Grupo Mexicano* was decided, a number of courts have held that the decision in *Grupo Mexicano* does not preclude a court from issuing a preliminary injunction order that freezes assets where substantial money claims also are included. *See, e.g., SEC v. ETS Payphones, Inc.* 408 F.3d 727, 734 (11th Cir. 2005); *United*

---

Los Angeles County Superior Court for breach of contract. *See* Ex. 3, Complaint in *Tracerain Capital, LLC v. Oriwa Villas S.A.*, No. BC539651 (filed Mar. 20, 2014). Tracerain's lawsuit alleges that Oriwa breached a contract to sell 1401 Londonderry Place by failing to deliver an original grant deed for the property. *See* id. at 3. Tracerain also has filed a *lis pendens* on 1401 Londonderry Place with the Los Angeles County Recorder of Deeds. *See* Ex. 4. At this point, the nature and extent of the relationship between Babikian and the true beneficial owners of Tracerain is not known. Certain documents produced to the Commission from the files of the escrow company engaged for the transaction suggest that, after Babikian received notice of this Court's March 13 Order, Oriwa continued in its efforts to transfer 1401 Londonderry Place to Tracerain. *See, e.g.,* Ex. 5 (March 16, 2014 email from representative of Tracerain to escrow agent three days after the initiation of this action, reporting that the seller (Oriwa) is obtaining a new original grant deed in an effort to transfer 1401 Londonderry Place to Tracerain); Ex. 6 (email from representative of Tracerain to escrow agent on April 22, 2014, reporting that Tracerain has "received some scanned documentation from the seller [Oriwa] with regards to the new grant deed"). The Commission has notified the escrow company, the title company, and counsel for Tracerain of this Court's March 13 and April 21 Orders, and is continuing to investigate this matter. The point for present purposes is that, given the uncertainty swirling around this property and Babikian's continued refusal to provide answers to the accounting order and discovery, it cannot be said that the writ of attachment on 1401 Londonderry Place renders the Commission over-secured.

*States ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 489, 496-99 (4th Cir. 1999); *SEC v. Bravata*, 763 F. Supp.2d 891, 919-20 (E.D. Mich. 2011). *See also SEC v. Reynolds*, No. 08-CV-0438-B (ECF), 2008 WL 4107528, at *2 (N.D. Tex. Aug. 22, 2008) (upholding asset freeze that covered potential civil penalties; citing *SEC v. Unifund SAL*, 910 F.2d 1028, 1041-42 (2d Cir. 1990)). This Court therefore correctly determined that *Grupo Mexicano* does not bar equitable prejudgment remedies in this matter.[4]

Finally, it is relevant to the analysis that "courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *United States v. First Nat'l City Bank*, 379 U.S. 378, 383 (1965) (quoting *Virginian Ry. Co. v. System Federation No. 40*, 300 U.S. 515, 552 (1937)); *see Rahman*, 198 F.3d at 497 (upholding asset-freezing injunction post-*Grupo Mexicano* in case where money damages also were sought; the justification for a preliminary injunction was "heightened by the fact that the public interest is at stake"). In this action, there exists strong evidence that Babikian perpetrated a calculated pump-and-dump scheme. There also exists strong evidence that Babikian uses a number of alter-ego front companies to conduct business, both in the United States and abroad. Yet Babikian has refused to submit an accounting to identify his assets, and he has refused to answer the Commission's discovery. Nor has he advanced any specific claim of hardship suffered as a result of this Court's asset freeze order and writs. Under these circumstances, a strong public interest counsels in favor of an asset freeze order and writs that maintain the *status quo* and secure the

---

[4] Babikian argues that this Court's order (and, presumably, those issued by other courts to the same effect) would allow artful pleading to circumvent a Supreme Court ruling because "any lawyer worth his or her salt could simply add some equitable remedy to his complaint for legal relief" and distinguish *Grupo Mexicano* (Mot. at 10). That is not the case. Artful pleading does not replace the substantive requirements for claiming relief, and a remedy in equity is available only when otherwise authorized. *See Rahman*, 198 F.3d at 496 (citing *Grupo Mexicano*, 527 U.S. at 318-20). Civil enforcement actions pursuant to the Securities Act of 1933 and the Securities Exchange Act of 1934 indisputably confer such equitable authority. *See Smith v. SEC*, 653 F.3d 121, 127 (2d Cir. 2011).

Commission during the pendency of an action calculated to enforce the securities laws. *See SEC v. Management Dynamics, Inc*., 515 F.2d 801, 808 (2d Cir. 1976) (SEC's role in enforcement proceedings is not that of "an ordinary litigant," rather it is a "statutory guardian charged with safeguarding the public interest in enforcing the securities laws"). For this additional reason, then, the motion for reconsideration should be denied.

**D. The prejudgment writs also are warranted under the FDCPA.**

The Court, in the alternative, could maintain the prejudgment remedies entered in favor of the Commission for the civil money penalties sought in this matter by relying upon the FDCPA. As set forth in the Commission's earlier arguments, the Commission's prejudgment claim for civil penalties in this matter is a "claim for a debt" for purposes of the FDCPA. *See* 28 U.S.C. § 3101(a) (authorizing application for a prejudgment remedy on a "claim for a debt"); § 3002(3)(B) (including "penalty" within the FDCPA's definition of the term "debt"). While true that there are no reported cases authorizing the use of the FDCPA's prejudgment remedies to secure civil penalties in an SEC enforcement action, the Commission is unaware of any case rejecting the use of this statutory mechanism, either. The record in this matter amply establishes "reasonable cause" to be believe that Babikian "has or is about to" take steps to hinder, delay, or defraud the Commission's efforts to satisfy a judgment for a civil money penalty, should one be entered by this Court. *See id.* § 3101(b). Accordingly, the Commission respectfully submits that the FDCPA supplies an alternative basis upon which to deny the motion for reconsideration.

## III. CONCLUSION

For the foregoing reasons, the Commission respectfully requests that the motion for reconsideration be DENIED.

Respectfully submitted,

_______/s/___________________________
Matthew P. Cohen (*pro hac vice*)
Michael J. Roessner, MR4195
Attorneys for Plaintiff
100 F Street, N.E., Mailstop 5985
Washington, D.C. 20549
(202) 551-7276 (Cohen)
cohenma@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Opposition and the exhibits thereto to be served on Stanley Morris, Esq., counsel for Defendant John Babikian, by electronic filing on the Court's ECF system on May 12, 2014.

_______/s/___________________________
Matthew P. Cohen (*pro hac vice*)